

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00115-CR

---

MATTHEW DEWON WILSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 074177-C-CR, Honorable Ana Estevez, Presiding

---

January 14, 2025

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Through two issues, Matthew Dewon Wilson, Appellant, challenges his conviction of murder.[1]  We affirm.

---

[1] TEX. PENAL CODE ANN. § 19.02.

**BACKGROUND**

Brandon Washington was fatally shot on July 19, 2017, and Appellant was arrested for murder that same night. On September 27, 2017, Appellant was charged by indictment with the first-degree felony offense of murder.

The case was called for jury trial on February 5, 2024. The jury found Appellant guilty as alleged in the indictment. The trial court assessed punishment at forty-two years' confinement in the Texas Department of Criminal Justice.

**ANALYSIS**

Speedy Trial Claim

In his first issue, Appellant asserts that his right to a speedy trial was violated.[2] He claims that the charges against him should have been dropped as a consequence.

The accused in a criminal prosecution is guaranteed the right to a speedy trial under the United States Constitution and Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The right to a speedy trial attaches once a person is either arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). When it is determined that a defendant's speedy trial rights have been violated, the appropriate remedy is dismissal of the charging instrument with prejudice. *Id.* at 281.

To determine whether the right has been denied to an accused, a reviewing court balances the factors described in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33

---

[2] Although Appellant fails to provide references to the record in the argument portion of his brief as required by Texas Rule of Appellate Procedure 38.1(i), we will address the arguments he raises.

L. Ed. 2d 101 (1972). *See Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017). These factors include (1) the length of delay, (2) reasons for delay, (3) the defendant's assertion of his speedy trial right, and (4) prejudice, if any, suffered by the defendant due to the delay. *Barker*, 407 U.S. at 530; *Hopper*, 520 S.W.3d at 924. The State bears the burden of justifying the length of delay, while the defendant has the burden to prove he asserted his right and has been prejudiced. *Cantu*, 253 S.W.3d at 280.

In our speedy trial analysis, we apply a bifurcated standard of review, assessing factual determinations against an abuse of discretion standard and conducting a de novo review of legal determinations. *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021). We give almost total deference to the trial court's findings of historical facts, provided those facts are supported by the record. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). However, the balancing of the *Barker* factors is a legal question that we review de novo. *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016).

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)). Unless the court finds the delay unreasonable, the analysis ends. *Flowers v. State*, No. 07-21-00276-CR, 2022 Tex. App. LEXIS 5193, at *3 (Tex. App.—Amarillo July 26, 2022, pet. ref'd) (mem. op., not designated for publication). However, no set or defined period of time has been held to constitute a per se violation of a defendant's right to a speedy trial, as each case is considered on its own merits. *Barker*, 407 U.S. at 530–31.

In the instant case, the time between Appellant's arrest on July 19, 2017, and the date the trial court considered Appellant's motion to dismiss on speedy trial grounds on May 5, 2023, was approximately five years and nine months.[3] *See State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (en banc) (calculating delay from arrest to speedy trial hearing). We conclude that the delay is presumptively prejudicial and turn to the remaining *Barker* factors.

The second factor in the *Barker* analysis is the reason for the delay. The State generally bears the burden of justifying the length of the delay in bringing a defendant to trial. *Cantu*, 253 S.W.3d at 280. Different reasons are ascribed different weights, as "an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, is weighed less heavily against the State; and a valid reason is not weighed against the State at all." *State v. Conatser*, 645 S.W.3d 925, 929 (Tex. App.—Dallas 2022, no pet.).

Here, the record reflects that some delay could be attributed to multiple changes in Appellant's representation. Appellant's first attorney, who was appointed in July of 2017, was discharged in July of 2018 and new counsel appointed. That same month, Appellant's second appointed attorney was discharged and new counsel again appointed. In September of 2019, Appellant's third attorney moved to withdraw. Although his request was denied, he filed a second motion to withdraw in December of 2019, which the trial

---

[3] The trial began nine months later, on February 5, 2024, or roughly six and a half years after Appellant's arrest.

court granted.[4]  Appellant's fourth attorney was appointed in January of 2020 and continued to serve through the completion of the jury trial.

Some delay may have been caused by the COVID-19 pandemic.  At a bond reduction hearing in May of 2020, conducted via Zoom, the trial court stated, "I will make findings that we are under COVID-19 restrictions.  Since then, we have been unable to conduct any in-person hearings and any jury trials."  Delays for neutral reasons, such as COVID-19 restrictions, weigh only slightly against the State.

Additionally, some delay is attributable to Appellant's conduct.  After the hearing in May of 2020, the trial court reduced Appellant's bond and required Appellant to wear an electronic monitor.  In October of 2020, the State filed a motion to revoke bond alleging that Appellant had tampered with his monitor.  Following a hearing, the trial court found that the device had been tampered with and increased Appellant's bond.  On November 4, 2020, Appellant was given two and a half hours to turn himself in to authorities.  However, Appellant absconded and his bond was subsequently revoked.  Appellant was eventually apprehended in May of 2021 and returned to jail.  Delays caused by Appellant, such as seeking the dismissal of his counsel and absconding while out on bond, weigh against him.

One two-month delay was caused directly by the State.  In January of 2023, the trial court set the trial for Monday, December 4, 2023.  On Friday, December 1, the State filed a motion for continuance after learning that an essential witness, the physician who

---

[4] Appellant's counsel attached a letter Appellant wrote to him stating, "I would like you to remove your self from my cases please."  Counsel represented that his communication with Appellant was "minimal and hostile."

performed the victim's autopsy, was hospitalized and unable to attend trial. The motion was granted and trial commenced on February 5, 2024. A missing witness can be a valid reason that justifies appropriate delay. *Barker*, 407 U.S. at 531. There is no argument that the State deliberately delayed Appellant's trial for strategic gain. In view of the various reasons for the six-year delay in bringing Appellant to trial, we conclude that the second *Barker* factor weighs only slightly against the State.

The third *Barker* factor is the appellant's assertion of his speedy trial right. Appellant's assertion of his right should be given "strong evidentiary weight" in our determination of whether he was deprived of that right. *Conatser*, 645 S.W.3d at 930. In the absence of a request for a speedy trial, we assume that the defendant did not actually desire one. *Balderas*, 517 S.W.3d at 771. The longer the delay between the defendant's arrest and his assertion of the right, the more we can assume the defendant did not actually want a speedy trial. *Id.* Here, the record reflects that Appellant's counsel filed a "Motion for Hearing with Request for Dismissal, alternatively, Motion for Speedy Trial or Reduction in Bond" on April 20, 2023, some five and a half years after Appellant's arrest. The filing indicates that Appellant's primary aim was dismissal of the charges or a bond reduction, rather than a speedy trial. A motion that seeks dismissal instead of a trial "will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. In view of Appellant's lengthy delay in asserting his right, this factor weighs in favor of the State.[5] *See Dragoo v. State*, 96

---

[5] We note that Appellant wrote a letter to the district clerk in 2018 indicating his desire for his appointed counsel to seek a speedy trial and bond reduction. He also filed a pro se motion to reduce bail and motion for speedy trial on October 31, 2022. However, because Appellant was represented by counsel and not entitled to hybrid representation, and because there is no indication that his requests were presented to the trial court, these pro se filings were ineffective to assert his right. *See Ussery v. State*,

6

S.W.3d 308, 314 (Tex. Crim. App. 2003) (defendant's failure to timely demand speedy trial indicates strongly that he did not really want one).

The fourth factor to consider is the prejudice, if any, suffered by the defendant due to the delay. The defendant bears the burden of showing how the delay caused him prejudice. *Cantu*, 253 S.W.3d at 280. We assess this factor in light of three interests the speedy trial right is intended to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Hopper*, 520 S.W.3d at 924.

Appellant asserts that the six-year delay from his arrest until trial is sufficient to establish a presumption of prejudice and that the burden shifted to the State to overcome such presumption. Generally, delays of five years or more are sufficient to give rise to a presumption of prejudice and relieve the defendant of satisfying the fourth *Barker* factor. *See Gonzales*, 435 S.W.3d at 814. However, this presumption is extenuated by Appellant's acquiescence in the delay. *See Dragoo*, 96 S.W.3d at 315. Appellant's failure to validly assert his right for more than five years sufficiently extenuates the presumption of prejudice such that it does not absolve Appellant of his burden to show some prejudice. *See Traylor v. State*, 534 S.W.3d 667, 676–77 (Tex. App.—Corpus Christi-Edinburg 2017) *rev'd on other grounds*, 567 S.W.3d 741 (Tex. Crim. App. 2018). We thus consider whether Appellant made a sufficient showing of some prejudice.

---

596 S.W.3d 277, 287–88 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (noting defendants not entitled to hybrid representation; when defendant who is represented by counsel files pro se speedy trial motion, trial court not required to consider motion).

On appeal, Appellant contends that he was prejudiced by the delay because "a potential alternative suspect, or at the very least a witness, died" while Appellant awaited trial.[6] However, Appellant made no such argument to the trial court. This Court reviews a trial court's ruling on a motion to dismiss for want of a speedy trial "in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Dragoo*, 96 S.W.3d at 313. Therefore, we will not consider Appellant's claim for the first time on appeal. Because Appellant failed to make a showing of prejudice, this factor weighs heavily against him.

Balancing the *Barker* factors, we conclude that Appellant's right to a speedy trial was not violated. *See Barker*, 407 U.S. at 534–36. We overrule Appellant's first issue on appeal.

Sufficiency of the Evidence

In his second issue, Appellant contends that his conviction is not supported by sufficient evidence. We review challenges to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), and *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). Under this standard, the evidence, when viewed in the light most favorable to the verdict, must be such that a rational factfinder could conclude that every element has been proved beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 902.

---

[6] Testimony indicates that the referenced individual, Orlando Kilgore, was cleared as a suspect. He died in 2021, two years before Appellant requested a speedy trial.

8

At trial, the State presented two witnesses who testified that they saw Appellant shoot the victim. Appellant presented two alibi witnesses, his brother and his nephew, who testified that Appellant was with them in another part of town at the time of the shooting. Appellant's sufficiency argument is premised on the theory that eyewitness testimony is "notoriously unreliable" and that his two alibi witnesses provided credible evidence that Appellant was not guilty of the crime.

An eyewitness's testimony has been held to provide sufficient evidence to support a jury's verdict. *See, e.g., Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Turner v. State*, 751 S.W.2d 240, 242 (Tex. App.—Dallas 1988, pet. ref'd) (op. on reh'g). The testimony from the two eyewitnesses in this case provided a sufficient evidentiary basis for a rational jury to conclude beyond a reasonable doubt that Appellant intentionally shot and killed Washington. *See Vasquez v. State*, 67 S.W.3d 229, 237 (Tex. Crim. App. 2002). Moreover, it is solely in the jury's purview to determine a witness's credibility. *See Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). When performing an evidentiary sufficiency analysis, we may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). We determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49. Here, we must conclude that the jury found the testimony of the eyewitnesses more persuasive than the testimony of

9

Appellant's alibi witnesses.  Because that evidence was sufficient to sustain the jury's finding of guilt, we overrule Appellant's second issue.

## CONCLUSION

Having overruled both of Appellant's issues, we affirm the judgment entered by the trial court.

Judy C. Parker
Justice

Do not publish.